THE HANOVER INSURANCE COMPANY,

    Plaintiff,                                       CASE NUMBER:

v.

LAND CLOSING SERVICES, INC.,

    Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

**NOW COMES** the Plaintiff, The Hanover Insurance Company ("Hanover"), by its attorneys Lewis, Brisbois, Bisgaard & Smith LLP and as and for its Complaint for Declaratory Judgment, alleges as follows:

### I.     NATURE OF THE ACTION

1. This is an insurance coverage action in which Hanover seeks a determination of the parties' rights and obligations under a professional liability policy issued by Hanover to Land Closing Services, Inc. with respect to claims asserted against it arising from a wire transfer fraud.

### II.     PARTIES, JURISDICTION AND VENUE

2. At issue is whether Hanover provides insurance coverage to Defendant Land Closing Services, Inc., for the claims asserted in the Underlying Action captioned *Shirley and Thomas Pendergast/Plaintiffs v. REMAX/Defendant and Third-Party Plaintiff v. Land Closing Services Inc. et al./Third Party Defendants* under case no. 22 CV 6363 pending in the Circuit Court of Milwaukee County in the State of Wisconsin.

3. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1).

4. Plaintiff Hanover Insurance Company ("Hanover") is a corporation organized under the laws of the State of New Hampshire, with its principal place of business in Worcester, Massachusetts.

5. Defendant Land Closing Services, Inc. is a domestic corporation whose principal place of business is located at 7700 W. Bluemound Road, Wauwatosa, Wisconsin 53213-3440.

6. The Complaint in the Underlying Action was filed by Shirley and Thomas Pendergast and involves the wiring of $259,518 to a fraudster due to fraudulent wiring instructions and said Plaintiffs seek damages from REMAX as a result thereof. REMAX added Land Closing Services Inc., as a Third-Party Defendant in the Underlying Action seeking damages against it as a result of the fraudulent wire transfer of funds.

7. Therefore, diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff, Hanover, on the one hand, and Defendant, on the other hand; and (b) the amount in controversy, including the potential costs of both defending and indemnifying Land Closing Services, Inc. substantially exceeds $75,000.

8. Venue is appropriate under 28 U.S.C. § 1391 because many of the acts – i.e., the making of the insurance contract at issue and certain actions alleged in the Underlying Action – which form the basis of this action occurred in the Eastern District of Wisconsin.

9. Land Closing Services, Inc. has requested a defense and indemnity from Hanover for the subject Underlying Action. Hanover is providing a defense under a reservation of rights and contends that it has no defense or indemnity obligation for the Underlying Action. As a result, an actual controversy exists between Hanover, on the one hand, and Land Closing Services, Inc. on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil

Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

III. **GENERAL ALLEGATIONS**

10. Hanover issued a Title Agents Professional Liability Policy to Land Closing Services Inc., with effective dates of coverage between 11/27/2021 to 11/27/2022. ("Policy") (A certified copy of the Policy is attached as **Exhibit A**).

11. The Policy provides in relevant part:

**A. COVERAGE**
1. Professional Services Coverage
**We** will pay on **Your** behalf those sums which **You** become legally obligated to pay as **Damages** because of any **Claim** made against **You** for a **Wrongful Act**.

\*\*\*\*

The following additional requirements and limitations shall apply to coverage provided under A.1., A.2., and A.3. above:
a. The **Wrongful Act** and **Professional Service**s must have first occurred on or after the applicable **Retroactive Date**(**s**);
b. None of **You** had knowledge of a **Wrongful Act**, or any facts or other circumstances, which may reasonably give rise to a **Claim** or **Supplemental Coverage Matter,** or knowledge of any **Claim** or **Supplemental Coverage Matter**, prior to the inception date of this **Policy**, or prior to the inception date of any prior policy with **Us** and continuously renewed; and
c. The **Claim** or **Supplemental Coverage Matter** must first be made and reported to **Us** in writing during the **Policy Period** or an applicable **Extended Reporting Period**.

**B. DEFENSE AND SETTLEMENT**
**1. We** have the exclusive right and duty to defend any **Claim** made under this **Policy**, even if the allegations are groundless, false or fraudulent. **You** may select defense counsel from **Our** preapproved panel counsel, subject to **Our** prior written consent. **We** will pay **Claim Expenses** in connection with a **Claim We** defend, but only for that portion of any **Claim** for which coverage is afforded under this **Policy**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution, or any **Claim** for **Equitable Relief**, against **You**. If a **Claim** is not covered under this **Policy**, **We** will have no duty to defend it. **We** reserve the right to recoup and seek reimbursement for all **Claim Expenses** incurred in defending a **Claim**, or any portion of a **Claim**, that is determined by a court of law not to be covered.

**D. DEFINITIONS**

**Claim** means any:
1. Demand received by an **Insured** for money, services or **Equitable Relief**;
2. **Suit**; ….

3

**Professional Services** means those services described in Item 7. of the Declarations page which **You** perform for others for a fee, provided the service is included on the following list:
1. Title Insurance Agent;
2. Title Abstractor;
3. Title Searcher;
4. Title Opinions;
5. Title Certifications;
6. Escrow Agent;
7. Closing Agent;
8. Settlement Agent;

**Wrongful Act** and **Wrongful Acts** means any actual or alleged negligent act, error, omission, misstatement or **Personal Injury**, solely in the rendering or failure to render **Your Professional Services**.

**E. EXCLUSIONS**

This **Policy** does not apply to **Claim(s)** or **Supplemental Coverage Matter(s)**:

18. Misappropriation
Based upon, arising out of, or in any way relating to, directly or indirectly,
a. Any actual or alleged commingling, improper use, theft, stealing, conversion, embezzlement or misappropriation of funds, accounts, or negotiable instruments or monies, by anyone;
b. Any of **Your** commingling, loss of, failure to safeguard, or failure or refusal to pay or return any client or customer funds, accounts or negotiable instruments;
c. Any sums received by any of **You** or credited to any of **Your** accounts;
d. Any fees, premium, taxes, claims, commissions or brokerage monies; or
e. Any actual or alleged, willful or intentional failure to follow, or disregard of, any escrow or closing instructions.

19. False Pretenses
Based upon, arising out of, or in any way relating to, directly or indirectly, any transfer, payment or delivery of funds, money or property, by anyone, which was caused or induced by trick, artifice, or the misrepresentation of a fact including, but not limited to, funds transfer fraud, social engineering, computer fraud, pretexting, phishing, spear phishing or any other confidence trick;

21. Delay
Based upon, arising out of or in any way relating to, directly or indirectly, any delay in delivery or performance, or failure to deliver or perform at or within an agreed upon period of time;

**THEFT OF FUNDS Endorsement**

**SUPPLEMENTAL COVERAGE**
**Theft of Funds Limit $100,000 in the Aggregate**
**Retention: $25,000**

B. Theft of Funds

4

We will reimburse **Yo**u as **Defense Expenses** for **Theft of Funds of Others**. Such payment shall only be made when in excess of the applicable Retention. The **Theft of Funds of Others** must have first occurred on or after the applicable Retroactive **Date**(**s**), and the **Theft of Funds of Other**s must wholly occur prior to the **Policy Termination Date**. Notwithstanding the last sentence of Section C.1.d., the Theft of Funds Limit in the schedule above is part of, not in addition to, the Limits of Liability referenced in Item 3. of the Declarations page.

C. Section C.2. Deductible is amended to include Retention:
The Retention shown in the Schedule above shall apply to any coverage provided by this endorsement. **We** shall only be liable for the for the amount of **Loss** for each **Supplemental Coverage Matter** which is in excess of the applicable Retention. The Retention amount shall be borne by the **Insureds** and remain uninsured. Deductible reductions do not apply to the Retention.

E. Section D. Definitions is amended to include:
**Theft of Funds of Others** means the theft, stealing, conversion or misappropriation of funds that none of **You** own, but that are in **Your** care, custody and control. (Emphasis Added).

F. Section E. Exclusions, Paragraph 18.a. and 19. are amended to include:
However, this Exclusion 18.a. does not apply to coverage provided under the Theft of Funds Supplemental Coverage.
However, this Exclusion 19. does not apply to coverage provided under the Theft of Funds Supplemental Coverage.

12. On or about October 5, 2022, Shirley and Thomas Pendergast filed a Complaint in Milwaukee County Circuit Court, under Case No. 22-cv-6363, against Realty Pros Inc., d/b/a REMAX Realty Pros ("REMAX").

13. The insured, Defendant Land Closing Services, Inc., reported to Hanover a potential claim on November 22, 2022, concerning the Prendergast wire transfer fraud claim made against REMAX.

14. A First Amended Complaint was filed by Plaintiffs on or about February 3, 2023, regarding the wiring of funds used to purchase a home to a fraudster. ("First Amended Complaint" A true and correct copy of the First Amended Complaint is attached as **Exhibit B**).

15. The Pendergasts allege in the First Amended Complaint that:

   a. "On or about January 30, 2022, the Pendergasts entered into a Buyer Agency Agreement with REMAX. (Ex. B, First Amended Complaint, ¶ 5).

5

b. Pursuant to the Agreement, REMAX drafted and submitted an offer to purchase a condominium on behalf of the Pendergasts for $265,000. (Ex. B, First Amended Complaint, ¶ 13).

c. On June 7, 2022, Shirley Pendergast received an email from a person identifying herself as Mary Accetta/REMAX stating she spoke with escrow officer Wendy Smolik/Land Closing Services and all funds were to be wired prior to closing and Wendy would email Shirley. (Ex. B. First Amended Complaint, ¶19a).

d. On June 7, 2022, Shirley Pendergast received an email from a person identifying herself as Wend Smolik at Land Closing Services about wiring the funds ahead of closing. (Ex. B. First Amended Complaint, ¶19c).

e. On June 7, 2022, Shirley Pendergast received all wire transfer instruction details and dollar amounts. (Ex. B. First Amended Complaint, ¶19e).

f. On June 7, 2022, Shirley Pendergast went to Chase Bank with written wire instructions from "Wendy" and advised the banker that "something seemed off" with two different receiving bank branch addresses listed in Minnesota, but Chase assured her it was fine. (Ex. B. First Amended Complaint, ¶19g).

g. On June 7, 2022, Chase Bank initiated the transfer of funds at 4:52 PM. (Ex. B. First Amended Complaint, ¶19h).

h. On June 7, 2022, at 5:08 PM Shirley Pendergast emailed "Wendy" AND the real Mary Accetta [REMAX] that the wire transfer was sent. (Ex. B. First Amended Complaint, ¶19i).

i. On June 7, 2022, at 9:46 PM Mary Accetta emailed Shirley Prendergast, "I was concerned it went to the right place". Mary Accetta took no steps the night of June

7, 2022 to verify the validity of the transaction despite the misgivings she clearly expressed about the timing and whether the money went to the "right place"."(Ex. B, First Amended Complaint, ¶ 19m).

j. "By June 13, 2022, the parties realized that Pendergasts' money of $259,217.31 was wired to someone other than the intended recipient in a scheme perpetrated by someone posing as "Wendy Smolik". As a result, not only did the Pendergasts lose their money, they lost their opportunity to purchase the condominium." (Ex. B, First Amended Complaint, ¶22).

16. On May 11, 2023, Defendant Realty Pros, Inc., d/b/a RE/MAX Realty Pros filed a Third-Party Complaint against Northwestern Bank, Land Closing Services, Inc., JPMorgan Chase Holdings LLC and Jane Doe. (A true and correct copy of the "Third Party Complaint" is attached as **Exhibit C**). Jane Doe is identified as "person identifying herself as Wendy Smolik" in the First Amended Complaint. Ex. C., ¶ 5. Collectively, the Amended Complaint and Third Party Complaint are referred to as "the Underlying Action".

17. The Third-Party Complaint includes a single count for negligence, Count II, directed against Land Closing Services. (Ex. C).

18. In the Third-Party Complaint, REMAX realleges and incorporates by reference, the First Amended Complaint, paragraph 19 as paragraph 10 of the Third-Party Complaint. (Ex. C., ¶ 10). REMAX further asserts in the Third-Party Complaint that:

a. On June 7, 2022, Shirley Pendergast went to Chase Bank, and its agent Glisch wired $259,217.13 of Pendergast's money to DOE's account under the name of Land Closing Services. (Ex. C, Third Party Complaint ¶10d).

7

b. On June 10, 2022, Wendy Smolik of Land Closing Services Inc., emailed REMAX's employee Accetta advising that Plaintiffs should call Wendy on June 13, 2022, to get wire instructions. (Ex. C, Third Party Complaint ¶19).

c. Two minutes later, REMAX's employee Accetta emailed Land Closing Services, Inc.'s employee, Wendy Smolik advising that "I believe the funds have already been wired…" (Ex. C, Third Party Complaint ¶19).

d. Smolik did not respond to REMAX on June 10, 11 or 12 which "allowed the theft to proceed and not be reversed." (Ex. C, Third-Party Complaint ¶ 21, 22).

19. Shortly after the filing of the Third-Party Complaint, Third-Party Defendant Land Closing Services Inc. tendered the defense of the Third-Party Complaint to Hanover.

20. Hanover agreed to defend Land Closing Services, Inc., on the Third-Party Complaint subject to a reservation of rights.

## COUNT I – DECLARATORY JUDGMENT
### (Exclusion 18 Misappropriation)

21. Hanover hereby incorporates the allegations contained in Paragraphs 1- 20 as if set forth fully herein.

22. The Third-Party Complaint filed by REMAX seeks relief against Land Closing Services, Inc., for a claim based upon, arising out of, or in any way related to, directly or indirectly, any actual or alleged misappropriation or improper use of funds.

23. The Policy excludes coverage for claims based upon, arising out of, or in any way related to, directly or indirectly, any actual or alleged misappropriation or improper use of funds in Exclusion 18.

24. The coverage provided by the Policy therefore does not apply to the claims against Land Closing Services, Inc. alleged in the Underlying Action and for which it seeks coverage under the Hanover Policy consistent with Exclusion 18.

WHEREFORE, The Hanover Insurance Company prays that this Honorable Court enter a judgment in its favor and against Third Party Defendant Land Closing Services, Inc., and (1) declare that Exclusion 18. Misappropriation in the Policy precludes coverage for the claims, damages and allegations raised against Land Closing Services, Inc. in the Underlying Action; (2) declare that The Hanover Insurance Company has no duty to defend or indemnify Third Party Defendant Land Closing Services, Inc., for the claims, damages and allegations raised against it in the Underlying Action ; (3) grant Hanover reimbursement of any incurred Claim Expenses paid in the defense of the Third-Party Complaint consistent with the terms of the Policy in Section B. Defense and Settlement from Land Closing Services, Inc.; and (4) grant any such further relief as the Court deems equitable and just.

## COUNT II – DECLARATORY JUDGMENT
### (Exclusion 19 False Pretenses)

25. Hanover hereby incorporates the allegations contained in Paragraphs 1-24 as if set forth fully herein.

26. The Third-Party Complaint filed by REMAX seeks relief for a claim asserted against it which is based upon, arising out of, or in any way related to, directly or indirectly, to any transfer, payment or delivery of funds, money by anyone which was caused or induced by trick, artifice or the misrepresentation of fact or funds transfer fraud.

27. The Policy excludes coverage for claims based upon, arising out of, or in any way related to, directly or indirectly, to any transfer, payment or delivery of funds, money by anyone

which was caused or induced by trick, artifice or the misrepresentation of fact or funds transfer fraud in Exclusion 19.

28. The coverage provided by the Policy therefore does not apply to the claims against Land Closing Services, Inc. alleged in the Underlying Action and for which it seeks coverage under the Hanover Policy consistent with Exclusion 19.

WHEREFORE, The Hanover Insurance Company prays that this Honorable Court enter a judgment in its favor and against Defendant Land Closing Services, Inc., and (1) declare Exclusion 19. False Pretenses in the Policy precludes coverage for the claims, damages and allegations raised against Land Closing Services, Inc. in the Underlying Action; (2) declare that The Hanover Insurance Company has no duty to defend or indemnify Defendant Land Closing Services, Inc., for the claims, damages and allegations raised against it in the Underlying Action; (3) grant Hanover reimbursement of any incurred Claim Expenses paid in the defense of the Third-Party Complaint from Land Closing Services, Inc., consistent with the terms of the Policy in Section B. Defense and Settlement; and (4) grant any such further relief as the Court deems equitable and just.

## COUNT III – DECLARATORY JUDGMENT
### (Exclusion 21 Delay)

29. Hanover hereby incorporates the allegations contained in Paragraphs 1-28 as if set forth fully herein.

30. The Third-Party Complaint filed by REMAX seeks relief for a claim asserted against Land Closing Services, Inc., which is based upon, arising out of, or in any way related to, directly or indirectly, to Land Closing Services Inc., delay in its performance regarding a response to an email concerning the wire transfer of funds having allegedly already been completed. (See Ex. C, ¶ 22).

31. The Policy excludes coverage for claims based upon, arising out of, or in any related to, directly or indirectly, any delay in performance in Exclusion 21.

32. The coverage provided by the Policy therefore does not apply to the claims against Land Closing Services, Inc. alleged in the Underlying Action and for which it seeks coverage under the Hanover Policy consistent with Exclusion 21.

WHEREFORE, The Hanover Insurance Company prays that this Honorable Court enter a judgment in its favor and against Defendant Land Closing Services, Inc., and (1) declare that Exclusion 21. Delay in the Policy precludes coverage for the claims, damages and allegations raised against Land Closing Services, Inc. in the Underlying Action; (2) declare that The Hanover Insurance Company has no duty to defend or indemnify Defendant Land Closing Services, Inc., for the claims, damages and allegations raised against it in the Underlying Action; (3) grant Hanover reimbursement of any incurred Claim Expenses paid in the defense of the Third-Party Complaint consistent with the terms of the Policy in Section B. Defense and Settlement; and (4) grant any such further relief as the Court deems equitable and just.

## COUNT IV – DECLARATORY JUDGMENT
### (Theft of Funds Endorsement)

33. Hanover hereby incorporates the allegations contained in Paragraphs 1-32 as if set forth fully herein.

34. The Third-Party Complaint filed by REMAX seeks relief for a claim asserted against Land Closing Services, Inc., which is based upon, arising out of, or in any way related to, directly or indirectly, to the wire transfer of funds which was in the possession of the Pendergasts and transferred by Chase Bank.

35.     **The Theft of Funds of Others** Supplemental Coverage Sublimit is limited to claims for theft, stealing, conversion or misappropriation of funds that is not owned by the Insured "but that are in **Your** care, custody and control."

36.     The Supplemental Coverage provided by the Policy does not apply to the claims against Land Closing Services, Inc. alleged in the Underlying Action and for which it seeks coverage under the Hanover Policy as the terms of coverage for the Theft of Funds of Others Coverage is not satisfied, as the funds were not in the care custody and control of Land Closing Services, Inc.

WHEREFORE, The Hanover Insurance Company prays that this Honorable Court enter a judgment in its favor and against Defendant Land Closing Services, Inc., and (1) declare that the Supplemental Coverage for Theft of Funds in the Policy does not extend coverage for the claims, damages and allegations raised against Land Closing Services, Inc. in the Underlying Action; (2) declare that The Hanover Insurance Company has no duty to defend or indemnify Defendant Land Closing Services, Inc., for the claims, damages and allegations raised against it in the Underlying Action ; (3) grant Hanover reimbursement of any incurred Claim Expenses paid in the defense of the Third-Party Complaint consistent with the terms of the Policy in Section B. Defense and Settlement; and (3) grant any such further relief as the Court deems equitable and just.

Dated at this 13th day of June 2023.

        Respectfully submitted,

        /s/ Darcy L. Ibach (WEID/IL Bar No. 6193101)
        LEWIS BRISBOIS BISGAARD & SMITH, LLP
        550 W. Adams Street, Suite 300
        Chicago, IL 60661
        Telephone: (312) 345-1718

Facsimile: (312) 345-1778
darcy.ibach@lewisbrisbois.com
*Attorney for Plaintiff*
*The Hanover Insurance Company*

/s/ Ruth E. Goldwater (WI Bar No. 1113531, WEID 6201239 )
LEWIS BRISBOIS BISGAARD & SMITH, LLP
550 W. Adams Street, Suite 300
Chicago, IL 60661
Telephone: (312) 345-1718
Facsimile: (312) 345-1778
ruth.mccoy@lewisbrisbois.com
*Attorney for Plaintiff*
*The Hanover Insurance Company*

13